Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 5940 | **DATE** | 11/8/2001 |
| **CASE TITLE** | DeBartolo vs. Blue Cross/Blue Shield of IL et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  Ruling held. **ENTER MEMORANDUM OPINION:** Defendants' motions (Docs 6-1 & 8-1) to dismiss are granted. The Plaintiff's complaint is dismissed. The Plaintiff is given leave to amend his complaint within 30 days.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | NOV 09 2001 | |
| | Notified counsel by telephone. | | date docketed | 14 |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 01 NOV -8 PM 3:16 | | |
| SCT | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

| | |
|---|---|
| DR. HANSEL M. DeBARTOLO, JR.,<br><br>Plaintiff,<br><br>vs.<br><br>BLUE CROSS/BLUE SHIELD OF ILLINOIS, ADMINISTRATIVE COMMITTEE OF WAL-MART, INC., ASSOCIATES' HEALTH AND WELFARE PLAN, and WALGREENS HEALTH PLAN,<br><br>Defendants. | 01 C 5940 |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter is before the court on the three Defendants, Health Care Service Corp., d/b/a Blue Cross Blue Shield of Illinois ("BCBSI"), Administrative Committee of Wal-Mart, Inc. Associates Health and Welfare Plan ("Wal-Mart Plan"), and Walgreens Health Plan ("Walgreens Plan") Rule 12(b)(6) motions to dismiss Plaintiff Dr. Hansel M. DeBartolo, Jr.'s ("Dr. DeBartolo") complaint. For the reasons set forth below the motion to dismiss is granted.



## BACKGROUND

The following facts are taken from the well-pled allegations in Dr. DeBartolo's complaint, which the court is obligated to accept as true for the purposes of this Rule 12(b)(6) motion to dismiss. Dr. DeBartolo is an Illinois licensed physician whose practice is located in Sugar Grove, Illinois. Dr. DeBartolo provided services to two patients, Erica Gregg ("Gregg") and Kimberly Carlson ("Carlson"). Prior to obtaining his services, both Gregg and Carlson assigned to Dr. DeBartolo the benefits due to them under their respective health care plans. Gregg has been a participant of the Wal-Mart Plan since January 1996; Carlson has been a participant of the Walgreens Plan at all times relevant to this case. The Wal-Mart Plan is funded by Wal-Mart and is an employee benefit plan within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA"). The Walgreens plan is funded by Walgreens and is also an employee benefits plan. Both plans are administered by BCBSI. Dr. DeBartolo is not one of BCBSI's network providers.

Dr. DeBartolo submitted claims to all of the defendants for the services he provided these patients. He received payment for all the claims he submitted with regard to Gregg, except for one claim that was electronically filed and upon which the "Assignment of Benefits" box was marked "no." Gregg's Wal-Mart Plan contains an anti-assignment provision. Dr. DeBartolo received no payments with regard to

Carlson. All the defendants either denied or failed to respond to his subsequent written requests for payment. Additionally, Dr. DeBartolo requested from all of the defendants information concerning how the defendants arrived at their determination of "usual and customary" charges. These requests were similarly denied by all of the defendants. Consequently, Dr. DeBartolo brought the instant action. His complaint contains six Counts based on state law grounds and ERISA. All three of the defendants have moved to dismiss.

## LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the sufficiency of the complaint, not to decide the merits of the case. Triad Assoc., Inc. v. Chicago Housing Auth., 892 F.2d 583, 586 (7th Cir. 1989). In ruling on a motion to dismiss, the court must first construe the complaint's allegations in the light most favorable to the plaintiff and all well-pleaded facts and allegations in the plaintiff's complaint must be taken as true. Bontkowski v. First Nat'l Bank of Cicero, 998 F.2d 459, 461 (7th Cir. 1993). The allegations of a complaint should not be dismissed for failure to state a claim "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Hartford Fire Ins. Co. v. California, 509 U.S. 764 (1993); Sherwin Manor Nursing Ctr., Inc. v. McAuliffe, 37 F.3d 1216, 1219

(7th Cir. 1994). Nonetheless, in order to withstand a motion to dismiss, a complaint must allege facts sufficiently setting forth the essential elements of the cause of action. Lucien v. Preiner, 967 F.2d 1166, 1168 (7th Cir. 1992).

In reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court is limited to the allegations contained in the pleadings themselves. Documents incorporated by reference into the pleadings and documents attached to the pleadings as exhibits are considered part of the pleadings for all purposes. Fed.R. Civ.P. 10(c). IN addition, "documents that a defendant attaches to a motion to dismiss are considered a part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." Venture Assoc. Corp. v. Zenith Data Sys. Corp., 987 F.2d 429, 431 (7th Cir. 1993). With these principles in mind, the court turns to the instant motion.

## DISCUSSION

The Counts in Dr. DeBartolo's complaint can be divided into two basic groupings. One grouping consists of Counts III and VI; the other consists of Counts I, II, IV, and V. Although Counts III and VI of Dr. DeBartolo's complaint are clearly based on 29 U.S.C. § 1132(c)(1) of ERISA, it is not clear upon which, if any, sections of ERISA Dr. DeBartolo bases Counts I, II, IV, and V. The court will first address Counts I, II, IV, and V.

I.   Counts I, II, III, & IV

In Count I, Dr. DeBartolo asserts 29 U.S.C. § 1132(a)(1)(B) as his jurisdictional basis. However, Dr. DeBartolo titles Counts I, II, IV, and V as "Breach of Fiduciary and Statutory Duty" and bases them on Illinois state law, 215 ILCS 5/370(a). It is unclear whether his allegations of breach of fiduciary duty are based solely in the Illinois statutory provision he cites or whether they are based on ERISA. If Dr. DeBartolo is attempting to bring a breach of fiduciary duty claim under ERISA, his attempt fails. A breach of fiduciary duty claim brought under ERISA must be brought under the ERISA enforcement provisions that allow recovery for breach of fiduciary duty claims: 29 U.S.C. § 1132(a)(2) or 29 U.S.C. § 1132(a)(3). The section Dr. DeBartolo cites, 29 U.S.C. § 1132(a)(1)(B), allows plan participants and beneficiaries to bring an action to recover plan benefits. "An action to recover from a breach of fiduciary duty occurred is distinct from an action to recover plan benefits under section 1132(a)(1)(B)" of ERISA. Anweiler v. Am. Elec. Power Serv., 3 F.3d 986, 992 (7th Cir. 1993) (citing McMahon v. McDowell, 794 F.2d 100, 109 (3rd Cir. 1986)); see Anderson v. Illinois Bell Tel. Co., 961 F. Supp. 1208, 1212 (N.D. Ill. 1997). Accordingly, if Dr. DeBartolo is attempting to base Counts I, II, IV, and V on ERISA, his attempt fails because he has not sufficiently delineated which ERISA section he is suing under and what he is suing for.

If Dr. DeBartolo is basing Counts I, II, IV, and V solely on 215 ILCS 5/370(a), as his response to the defendants' motions to dismiss seems to indicate, the question becomes whether 215 ILCS 5/370(a) is, as all the defendants argue, preempted by ERISA. ERISA

has three provisions relevant to this preemption analysis. First, ERISA's preemption clause provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and are not exempt under section 1003(b) of this title." § 1144(a). The United States Supreme Court has repeatedly instructed that ERISA's preemption provision is very broad and "clearly expansive." See California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc., 519 U.S. 316 (1997). "It has a 'broad scope,' and an 'expansive sweep'; and...it is 'broadly worded,' 'deliberately expansive,' and 'conspicuous for its breadth.'" California Div., 519 U.S. at 324 (quoting New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 656 (1995); Metro. Life Ins. Co. v. Massachusetts, 471 U.S. 724 (1985); Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 47 (1987); Ingersoll-Rand Co. v. McClendon, 498 U.S.. 133, 138 (1990); Morales v. Trans World Airlines, Inc., 504 U.S. 374, 384 (1992)).

A law "relates to" an employee benefit plan if it (1) has a connection with or (2) reference to such a plan. California Div., 519 U.S. at 324; see also Arkansas Blue Cross and Blue Shield v. St. Mary's Hosp., Inc., 947 F.2d 1341, 1344-45 (8th Cir. 1992) (listing factors courts consider in determining whether a state statute "relates to" ERISA plans). Where a state law "acts immediately and exclusively upon ERISA plans...or where the existence of ERISA plans is essential to the law's operation...that

'reference' will result in pre-emption." California Div., 519 U.S. at 324. To determine whether a statute has a "connection with" an ERISA plan, the court looks to the objectives of the ERISA statute to determine if Congress understood that the state law would survive preemption, and also to the nature and effect of the state law on ERISA plans. See id. Congress's objective was to ensure that plans and plan administrators would be subject to a uniform body of benefits law. The "goal was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal government...." Travelers, 514 U.S. at 656. Thus, if a state law mandates employee benefit structures or their administration, it is preempted by ERISA. Id. at 658.

Here, the Illinois law Dr. DeBartolo relies on "relates to" the ERISA plans at issue and, therefore, falls within ERISA's preemption provision. The Illinois law provides:

> Subject to the terms of the policy or any contract relating thereto...if an enrollee or insured of an insurer, health maintenance organization, managed care plan, health care plan, preferred provider organization, or third party administrator assigns a claim to a health care professional or health care facility, then payment shall be made directly to the health care professional or health care facility....

215 ILCS 5/370(a). Although the statute's introductory language makes it subject to the terms of a particular plan, Dr. DeBartolo would have this court ignore this express introductory language in the statute and find that the statute negates anti-assignment clauses in plans. This court declines to do so.

With regard to plans that do not contain an express and clear anti-assignment clause, the statute forces plan administrators to honor all assignments of benefits made by plan beneficiaries. The statute thus takes from the plan administrator and gives to plan beneficiaries control over who should receive payment. Because the state law at issue shifts control over benefit distribution, the law "interferes with the administration of [a plan]." Arkansas Blue Cross, 947 F.2d at 1341 (quoting MacLean v. Ford Motor Co., 831 F.2d 723 (7th Cir. 1987)); see Egelhoff v. Egelhoff, 121 S.Ct. 1322, 1328 (2001) (stating payment of benefits is a central matter of plan administration). Additionally, the statute imposes on plan administrators the "burden of determining whether and to whom the plan beneficiaries have made assignments and then paying the appropriate parties." Arkansas Blue Cross, 947 F.2d at 1347. Furthermore, application of the statute may have a negative effect on a plan's ability to enter into provider agreements with health care providers. Id. Moreover, absent preemption, the statute would preclude both a uniform interstate benefit package if a plan wished to provide one and nationally uniform plan administration because of differing state laws affecting assignments in the context of ERISA plans. See Egelhoff, 121 S.Ct. at 1328 (stating "[u]niformity is impossible if plans are subject to different legal obligations in different States."). This type of interference with plan administration is "precisely the burden that ERISA pre-emption was intended to avoid." Id. Accordingly, the court finds that 215 ILCS 5/370(a) falls within ERISA's preemption clause. See Arkansas

Blue Cross, 947 F.2d at 1341 (finding state assignment statute preempted by ERISA); St. Francis Regional Med. Ctr. v. Blue Cross and Blue Shield of Kansas, 49 F.3d 1460, 1464-65 (10th Cir. 1995) (finding that ERISA preempted any Kansas law affecting assignability of insurance benefits with regard to ERISA plans at issue).

The next question thus becomes whether the Illinois law is "saved" from preemption by the second ERISA preemption provision relevant in this case: the "savings clause." The "savings clause" empowers the states to regulate certain areas of traditional state regulation. The "savings clause" provides: "nothing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supersede any laws of the United States...or any rule or regulation issued under any such law." 29 U.S.C. § 1144(b)(2)(A). Here, 215 ILCS 5/370(a) is part of the Illinois Insurance Code and controls the terms of insurance contracts. Insurance is an area traditionally regulated by the states. Therefore, 215 ILCS 5/370(a) satisfies the "savings clause" and is not preempted. See FMC Corp. v. Holliday, 498 U.S. 52, 59-60 (1990) (finding statute fell within "savings clause" because it directly controlled the terms of insurance contracts by invalidating their subrogation provisions); Lopez v. Guardian Life Ins. Co., 834 F. Supp. 251, 253-55 (N.D. Ill. 1993) (concluding Illinois Insurance Code qualifies as a state insurance regulation and is thus not preempted by ERISA).

The "savings clause," however, is in turn modified by the third provision relevant to this preemption analysis: the "deemer clause." The "deemer clause" provides:

> Neither an employee benefit plan...nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer...or to be engaged in the business of insurance...for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies.

29 U.S.C. § 1144(b)(2)(B). This ERISA provision "exempt[s] self-funded ERISA plans from state laws that 'regulate insurance' within the meaning of the savings clause." FMC Corp., 498 U.S. at 61; see Reilly v. Blue Cross and Blue Shield United of Wis., 846 F.2d 416, 425 (7th Cir. 1988). Conversely, employee benefit plans that are insured "remain[] an insurer for purposes of state laws purporting to regulate insurance after application of the deemer clause." FMC Corp., 489 U.S. at 61; see Reilly, 846 F.2d at 425. An ERISA plan insured by an insurance company is "bound by state insurance regulations," while a self-funded, or self-insured, plan is not. FMC Corp., 498 U.S. at 61 & 64; see Reilly, 846 F.2d at 425. In this case, both the Wal-Mart Plan and the Walgreens Plan are self-funded ERISA plans. Accordingly, although 215 ILCS 5/370(a) falls within the "savings clause," it is nonetheless preempted with regard to the Wal-Mart Plan and the Walgreens Plan. Thus, Counts I, II, IV, and V are dismissed with prejudice insofar as they are based on 215 ILCS 5/370(a).

## II. Counts III & VI

In Counts III and VI, Dr. DeBartolo alleges that the Wal-Mart Plan and the Walgreens Plan respectively, and together with BCBSI, are subject to fines under section 502(c) of ERISA, 29 U.S.C. § 1132(c)(1), because they refused to provide him with certain information he requested. Under 29 U.S.C. § 1132(c)(1), a plan administrator is subject to fines if the plan administrator violates 29 U.S.C. § 1024(b)(4). That section requires that:

> [t]he administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instrument under which the plan is established or operated.

29 U.S.C. § 1024(b)(4). Two issues arise with regard to the Counts Dr. DeBartolo bases on this ERISA section. First, whether Dr. DeBartolo has standing to sue under 29 U.S.C. § 1132(c)(1) by virtue of the assignment of benefits he entered into with both patients. Second, whether the information Dr. DeBartolo sought is of the kind that must be disclosed under ERISA, 29 U.S.C. § 1024(b). The court addresses each issue in turn.

The Seventh Circuit has instructed that assignees have standing to sue ERISA fiduciaries to recover benefits under 29 U.S.C. § 1132(a)(1)(B). See Decatur Mem'l Hosp. v. Connecticut Gen. Life Ins., 990 F.2d 925, 926 (7th Cir. 1993); Kennedy v. Connecticut Gen. Life Ins. Co., 924 F.2d 698, 700 (7th Cir. 1991). The Seventh Circuit explained that, once a plan participant validly assigns his benefits to a health care

provider, the health care provider becomes a "beneficiary" within the meaning of ERISA. See Kennedy, 924 F.2d at 700. An assignee's right to sue under 29 U.S.C. § 1132(a)(1)(B) extends to 29 U.S.C. § 1132(a)(1). See Loretto Hosp. v. Local 100-A Health and Welfare, Civ. No. 97 C 1353, 1998 WL 852878, at *9 (N.D. Ill. Dec. 4, 1998); Alexian Bros. Med. Ctr. v. South Lorain Merchants Health and Welfare Plan, Civ. No. 98 C 0559, 1998 WL 911783 (N.D. Ill. Dec. 24, 1998).

A health care provider's right to recover under ERISA as an assignee, however, depends on the health care provider having a valid, enforceable assignment agreement. See Plumb v. Fluid Pump Serv., Inc., 124 F.3d 849, 863 (7th Cir. 1997); Kennedy, 924 F.2d at 700; Loretto Hosp., 1998 WL 852878 at *1; Alexian Bros. Med. Ctr., 1998 WL 911783, at *4. An assignment is not valid and enforceable if the plan contains an anti-assignment provision. See Davidowitz v. Delta Dental Plan of California, 946 F.2d 1476 (9th Cir. 1991); Washington Hosp. Ctr. Corp. v. Group Hospitalization and Med. Serv., 758 F. Supp. 750 (D.D.C. 1991); Parkside Lutheran Hosp. v. R.J. Zeltner & Assoc., Inc., 788 F. Supp. 1002 (N.D. Ill. 1992); Neurological Res., P.C. v. Anthem Ins. Co., 61 F. Supp.2d 840 (S.D. Ind. 1999); Lehigh Valley Hosp. v. UAW Local 259 Soc. Sec. Dep't., Civ. No. A. 98-4116, 1999 WL 600539, at *1 (E.D. Pa. Aug. 10, 1999); City of Hope Nat'l Med. Ctr. v. Seguros De Servicios De Salud De Puerto Rico, Inc., 983 F. Supp. 68 (D.P.R. 1997). Here, the Wal-Mart Plan included an anti-assignment clause. Comp. Exhibit E; ¶ 12. Additionally, Dr. DeBartolo alleges in his

complaint that, with regard to patient Gregg, the only claim the Wal-Mart Plan did not make a direct payment to him for was a claim that was not assignable. ¶ 12. Therefore, Dr. DeBartolo's assignment is not enforceable with regard to the one claim he alleges the Wal-Mart Plan did not pay him for directly. Accordingly, he does not have standing under ERISA to sue the Wal-Mart Plan. He may, however, have standing with regard to the Walgreens Plan. The complaint does not contain any information on whether the Walgreens Plan similarly had an anti-assignment clause. As such, the court cannot determine at this stage in the litigation whether Dr. DeBartolo has standing under ERISA to sue the Walgreens Plan. Thus, Count III is dismissed for lack of standing, but Count VI is not.

Assuming Dr. DeBartolo does have standing with regard to the Walgreens Plan, the information Dr. DeBartolo sought must be of the kind that must be disclosed under ERISA, 29 U.S.C. § 1024(b)(4). The information Dr. DeBartolo requested from each of the plans was the plan's "usual and customary" charges for medical services. "Usual and customary" charges is not one of the types of information expressly enumerated in § 1024(b)(4). The question thus becomes whether "usual and customary" charges falls within that section's catch-all provision: "other instrument under which the plan is established or operated."

The Seventh Circuit has adopted a narrow reading of this catch-all provision. See Ames v. Am. Nat'l Can Co., 170 F.3d 751, 758-59 (7th Cir. 1999). The court rejected

an interpretation of the catch-all provision as conferring upon beneficiaries "a right to disclosure of all documents that provide information about a plan and its benefits." Ames, 170 F.3d at 758. Rather, the catch-all provision reaches "only formal legal documents governing a plan." Id. (citing Faircloth v. Lundy Packing Co., 91 F.3d 648, 654-54 (4th Cir. 1996); Bd. of Tr. of the CWA/ITU Negotiated Pension Plan v. Weinstein, 107 F.3d 139, 142-45 (2d Cir. 1997)); see Brown v. Am. Life Holdings, Inc., 190 F.3d 856, 860-62 (8th Cir. 1999); Hughes Salaried Retirees Action Comm. v. Adm'r of Hughes Non-bargaining Ret. Plan, 72 F.3d 686 (9th Cir. 1995). "This is not to say, of course, that companies have a permanent privilege against disclosing other documents." Ames, 170 F.3d at 759. "It means only that the affirmative obligation to disclose materials under [§ 1024(b)(4)] punishable by [statutory] penalties, extends only to a defined set of documents." Id. If a particular situation proceeds to litigation, information that does not fall within the disclosure provision will still be discoverable in the ordinary course of litigation if the information meets the relevancy standards of Federal Rule of Civil Procedure 26(b)(1). See id. at 759.

In deciding whether a particular type of information falls within this narrow interpretation of the catch-all provision, a court must consider whether the information is similar in nature to the information specifically set forth in the provision. See Hughes Salaried Retirees, 72 F.3d at 689 (stating "it is well established that 'words grouped in a list should be given related meaning'") (quoting Massachusetts v. Morash, 490 U.S. 107, 114-15 (1989)); Weinstein, 107 F.3d at 142-43. The types of documents that must

be disclosed according to 29 U.S.C. § 1124(b)(4) are formal documents that "plainly set[] out rights and duties." Weinstein, 107 F.3d at 143. Indeed, the legislative history indicates that ERISA's disclosure requirements were meant to inform individual plan participants and benefits as to where they "stand[] with respect to the plan – what benefits he may be entitled to, what circumstances may preclude him from obtaining benefits, what procedures he must follow to obtain benefits, and who are the persons to whom the management and investment of his plan funds have been entrusted." Id. (quoting S.Rep. No. 127, 93d Cong., 2d Sess. (1974), reprinted in 1974 U.S.C.C.A.N. 4838, 4863); Hughes Salaried Retirees, 72 F.3d at 690 (same).

In this case, the information Dr. DeBartolo requested regarding "usual and customary" charges does not constitute a legal document governing the Walgreens Plan. The information does not inform plan participants and beneficiaries about their rights under the plan. Indeed, Dr. DeBartolo appears to desire the information in order to determine whether or why the Walgreens Plan is discriminating between network providers and non-network providers; a purpose having little, if anything, to do with a plan participant's rights under the plan.

Furthermore, Dr. DeBartolo has not referred this court to a single opinion where a court held that ERISA required that such information be disclosed to plan participants or beneficiaries. While a court may find guidance in the Advisory Opinion he quotes, Pension and Welfare Benefits Administration Opinion Letter 96-14A, (July 31, 1996), the court is not bound by that letter. See Weinstein, 107 F.3d at 145-46. The letter has

not been promulgated as regulation. See id. Moreover, the letter was "issued pursuant to administrative procedure that specifies that "only the parties described in the request for opinion may rely on the opinion, and they may rely on the opinion only to the extent that...the situation conforms to the situation described in the request for opinion." Id. (quoting Employee Benefit Plans, Advisory Opinion Procedure, 41 Fed. Reg. 36281, 36283 (1976)). Accordingly, the court finds that the information Dr. DeBartolo requests is not the type of information an ERISA plan administrator is required to disclosed under 29 U.S.C. § 1024(b)(4). See also Ehlmann v. Kaiser Found. Health Plan, 20 F. Supp.2d 1008 (N.D. Texas 1998) (finding that ERISA does not impose fiduciary duty on plan administrators to disclose compensation arrangement with physicians).

## CONCLUSION

For the foregoing reasons, the Plaintiff's complaint is dismissed. The Plaintiff is given leave to amend his complaint within thirty days.

_Charles P. Kocoras_
Charles P. Kocoras
United States District Judge

Dated: November 8, 2001